UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X   Case: 1:19-cv-00017-NGG-ST

SASHA HONORE

                Plaintiff,   **AMENDED COMPLAINT**

     -against-   PLAINTIFF'S DEMAND
                                                                                             TRIAL BY JURY

THE CITY OF NEW YORK,
DET. MICHAEL FODER,
P.O. RAYMOND HIGGINS,
P.O. "JANE DOE" and
P.O "JOHN DOE" 1-10.

1'through'10 inclusive,
the names of the last Defendants
being fictitious, the true names
of the Defendants being unknown
to the Plaintiff(s).

                Defendants.

-----------------------------------------------------------X

Plaintiff SASHA HONORE, by and through his attorney, Paul Hale, Esq. 26 Court St. Brooklyn, NY 11242, complaining of the Defendants, The City of New York, DET. MICHAEL FODER, P.O. RAYMOND HIGGINS, Police Officers "John" and "Jane" Doe, collectively referred to as the Defendants, upon information and belief allege as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the Plaintiff by the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

2. This case is being brought pursuant to 42 U.S.C. § 1983.  Jurisdiction supporting Plaintiff's claims for attorneys' fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

3. All causes of action not relying exclusively on the aforementioned federal and state causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of Plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of Plaintiff's claims under applicable State and City laws.

4. As the deprivation of rights complained of herein occurred within the county of Kings in the State of New York.

## NATURE OF THE ACTION

5. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983, § 1988 [and § 1985], [and arising under the law and statutes of the State of New York].

6. This is an action to further seek compensation for the serious and permanent personal injuries sustained by the plaintiff, as a result of the actions of the defendants, perpetrated while said defendant police officers were in the process of illegally and unlawfully arresting plaintiff.

## PARTIES

7. Plaintiff, SASHA HONORE, resides in the State of New York, and is a resident of the State of New York.

8. At all times relevant to this action, Defendant DET. MICHAEL FODER was a police officer

with the City of New York Police Department and acting under color of state law. He is being sued in both his individual and official capacity.

9. At all times relevant to this action, Defendant P.O. RAYMOND HIGGINS was a police officer with the City of New York Police Department and acting under color of state law. He is being sued in both his individual and official capacity.

10. At all times relevant to this action, Defendants Police Officers are and were officers of the City of New York Police Department and acting under color of state law. Said officers are being sued in both their individual and official capacities.

11. The Defendant, City of New York, is a municipality in the State of New York and employs the Defendant Police Officers.

12. The Defendants Police Officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the Defendants Police Officers' acts as described above.

## FACTUAL BACKGROUND

13. On February 9, 2016 MR. HONORE was arrested and placed into Federal custody in Brooklyn, NY.

14. MR. HONORE was charged as part of a conspiracy to commit armed robbery with two other individuals. (16-crim-00098 E.D.N.Y)

15. MR. HONORE had nothing whatsoever to do with these charges. MR. HONORE did not know any co-defendants. MR. HONORE was not at any of the crime locations.

16. MR. HONORE'S arrest was entirely predicated on the false testimony of a NYPD DET. MICHAEL FODER.

17. DET. MICHAEL FODER has since pled guilty to perjury relating to testimony in MR. HONORE'S case.[1]   DET. MICHAEL FODER'S testimony in MR. HONORE'S case was related to the fabrication of photo array lineups which led to the false identification, arrest, and prosecution of MR. HONORE and his co-defendants.

18. DET. FODER now faces up to five years behind bars and a $250,000 fine following his guilty plea to committing perjury.[2]

19. "I falsely testified on the dates I put," the detective told Brooklyn federal Judge Pamela Chen, referencing an October 2015 proceeding in which he took the stand during a pre-trial hearing for the armed robbery of a livery cab driver.

20. DET. FODER initially claimed to have shown the victim photo arrays of potential suspects on Nov. 27, 2015, and Feb. 14, 2016.

21. But prosecutors later discovered the dates did not match with reality, and DET. FODER was charged with perjury in February 2018.

22. DET. FODER said the photo arrays were shown on later dates than he had testified to, and admitted making false statements under oath.

23. Upon discovery of DET. FODER'S lies, United States Attorneys made a motion to dismiss with prejudice all charges against MR. HONORE.   The motion was granted on March 14, 2017.

24. MR. HONORE was subsequently released from Federal Custody.

25. MR. HONORE spent approximately thirteen (13) months in Federal jail in Brooklyn MDC during the pendency of his case.

---

[1] USA v. Foder  1:18-cr-0009 7-PKC-1 (EDNY)

[2] "Ex-NYPD detective facing 5 years in jail after pleading guilty to perjury" By Olivia Bensimon and Emily Saul, New York Post, August 3, 2018

26. DET. FODER caused the arrest and prosecution of an entirely innocent man. As a result, MR. HONORE lost his liberty for 13 months.

27. Upon information and belief, DET. FODER'S partner, P.O. RAYMOND HIGGINS knew that DET. FODER'S identification and process for identification of Mr. HONORE was seriously flawed and did not intervene in correcting the false identification.

28. Upon information and belief, DET. FODER and P.O. RAYMOND HIGGINS participated in the false identification of MR. HONORE.

29. Upon information and belief, DET. FODER and P.O. RAYMOND HIGGINS knew that MR. HONORE was innocent.

30. Upon information and belief, DET. FODER and P.O. RAYMOND HIGGINS knew that MR. HONORE identification process was not in line with police protocol and fundamentally flawed.

31. All officer/Defendants involved in the obviously false arrest of MR. HONORE had a duty to stop the arrest and prosecution of MR. HONORE. All officer/Defendants involved in the false arrest of MR. HONORE had a reasonable opportunity to intervene in the obviously illegal arrest. All officer/Defendants involved in the false arrest of MR. HONORE did not intervene to stop the obvious illegal actions against MR. HONORE.

32. Furthermore, MR. HONORE was incarcerated for over 13 months and the officer/Defendants did not lift a finger to corroborate or further investigate the identification of MR. HONORE despite having amble opportunity to do so. Instead, they knowingly decided to let an innocent man sit in jail for 13 months.

33. At no time did Plaintiff commit any offense against the laws of New York City and or State for which an arrest may be lawfully made.

34. The unlawful arrest of Plaintiff by defendants was intentional, malicious, reckless and in bad faith.

35. As a direct and proximate result of Defendants' actions, Plaintiff was arrested and detained without just or probable cause.

36. As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges and immunities under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

37. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the Defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including Defendants in this case, to engage in unlawful conduct.

38. Defendants City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the Defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including Defendants in this case, to engage in unlawful conduct.

39. The actions of Defendants, acting under color of State law, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in their person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

40. By these actions, Defendants have deprived Plaintiff of rights secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

## AS A FIRST CAUSE OF ACTION:
### 42 U.S.C Section 1983–Fourth, Eighth and Fourteenth Amendments–against all Defendants

41. Plaintiff hereby restate all paragraphs above of this Complaint as if fully set forth here.

42. By detaining and imprisoning Plaintiff, without justification, probable cause or reasonable suspicion, and assaulting him, the Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. Section 1983, including, but not limited to, rights guaranteed by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

43. The Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendant Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of their constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

44. As a direct and proximate cause of the acts of the Defendants, Plaintiff suffered the following injuries and damages:

    A. Arrest not based upon probable cause;

    B. Unwarranted and malicious criminal prosecutions;

    C. Falsely arrested;

    D. Maliciously prosecuted;

    E. Denial of a fair trial; and

    F. Deprivations of liberty without due process of law.

45. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before stated.

## AS A SECOND CAUSE OF ACTION:
### 42 U.S.C Section 1983–Failure to Intervene in Violation of Fourth Amendment– against all Defendants

46. Plaintiff hereby restate all paragraphs above of this Complaint as if fully set forth here.

47. Each and every individual defendant had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

48. The individual defendants failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so.

49. As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

50. Defendants, as a matter of policy and practice, have with deliberate indifference failed to properly sanction or discipline officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing officers including defendants in this case, to engage in unlawful conduct. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident nor was it isolated to these officers. The Defendants have been aware for some time, from lawsuits, notices of claim, complaints filed with the Inspector General, that a disturbing number of their officers unlawfully use excessive force against citizens and create charges in an effort to cover up their misconduct, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the defendants have allowed policies and

practices that allow the aforementioned to persist.

51. All of the aforementioned has created a climate where officers lie to investigators in paperwork and charging instruments, and testify falsely, with no fear of reprisal.

52. The defendants are aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the defendants have failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

53. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified actions against a civilian.

54. The Defendant Police Officers were present for the above-described incident and witnessed other Defendants' actions.

55. The Defendant Police Officers' actions against Plaintiff was unjustified under the circumstances yet the Defendants Police Officers failed to take any action or make any effort to intervene, halt or protect Plaintiff from being subjected to their actions by other Defendants Police Officers.

56. The Defendant Police Officers' violations of Plaintiff's constitutional rights by failing to intervene in other Defendants' clearly unconstitutional actions resulted in the injuries and damages set forth above.

## AS A THIRD CAUSE OF ACTION:
*Monell* claim[3]

57. Defendant City of New York, as a matter of policy and practice, has with deliberate

---

[3] Monell v. City of New York Department of Social Services, 436 U.S. 658

indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers, including defendants in this case, to engage in unlawful conduct.

58. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[4] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[5]

59. The New York Post reported in September 2018 that "New York City has shelled out $384 million in taxpayer funds to settle cases of police misconduct over the past five years — and more than half of the suits brought against officers didn't even go to trial, a Post analysis has found."[6]

60. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S.

---

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 October 15, 2010 last available on December 9, 2010.

[6] "NYC has shelled out $384M in 5 years to settle NYPD suits," by Yoav Gonen, Julia Marsh and Bruce Golding, September 4, 2018    https://nypost.com/2018/09/04/nyc-has-shelled-out-384m-in-5-years-to-settle-nypd-suits/

247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

61. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

62. An investigation by The New York Times[7] has found that on more than 25 occasions since January 2015, judges or prosecutors determined that a key aspect of a New York City police officer's testimony was probably untrue. The Times identified these cases — many of which are sealed — through interviews with lawyers, police officers and current and former judges.

> "Behind closed doors, we call it testilying," a New York City police officer, Pedro Serrano, said in a recent interview, echoing a word that officers coined at least 25 years ago.[8] "You take the truth and stretch it out a little bit."
>
> In many instances, the motive for lying was readily apparent: to skirt constitutional restrictions against unreasonable searches and stops. In other cases, the falsehoods appear aimed at convicting people — who may or may not have committed a crime — with trumped-up evidence.
>
> In two recent cases, The Times found, officers appear to have given false accounts about witness identifications. These cases are particularly troubling because erroneous identifications by witnesses have been a leading cause of wrongful convictions.
>
> "There's no fear of being caught," said one Brooklyn officer who has been on the force for roughly a decade. "You're not going to go to trial and nobody is going to be cross-examined."

63. Upon information and belief, DET. MICHAEL FODER has been sued in at least eight other law suits prior to this lawsuit:

    a) 1:2011cv02168 St. Fleur v. City of New York et al; New York Eastern District Court

    b) 1:2012cv00250 Paul v. City of New York et al New York Eastern District Court

---

[7] 'Testilying' by Police: A Stubborn Problem by Joseph Goldstein, March 18, 2018, https://www.nytimes.com/2018/03/18/nyregion/testilying-police-perjury-new-york.html

[8] New York Police Often Lie Under Oath, Report Says by Joe Sexton, April 22, 1994, https://www.nytimes.com/1994/04/22/us/new-york-police-often-lie-under-oath-report-says.html?pagewanted=all&module=inline

    c) 1:2012cv01636 <u>Beckford v. The City of New York et al</u> New York Eastern District Court

    d) 1:2013cv05701 <u>Cohen v. City of New York et al</u> New York Eastern District Court

    e) 1:2013cv06506 <u>Pelissier v. The City Of New York City et al</u> New York Eastern District Court

    f) 1:2014cv00549 <u>Lormil v. City of New York et al</u> New York Eastern District Court

    g) 1:2015cv01539 <u>Fortune et al v. City of New York et al</u> New York Eastern District Court

    h) 1:2015cv04498 <u>Cousins v. City of New York et al</u> New York Eastern District Court

64. The City of New York does not track the lawsuits filed against DET. MICHAEL FODER or other officers and likewise does not track the amount of lawsuits filed per precinct or command. There is no mechanism through which Commanding Officers or Deputy Inspectors are alerted or can track how much liability their officers are within their precinct or command in terms of civil rights lawsuits. DET. MICHAEL FODER'S duties had not been modified as a result of his multiple lawsuits. His conduct, despite multiple civil rights lawsuits, sends a message to new police officers that the City of New York tolerates civil rights violations and that they may commit civil rights violations without punishment. The City's failure to review and digest lawsuits for patterns of misconduct and essentially turn a blind eye towards officers involved in multiple incidents of police brutality caused plaintiff's damages.

65. The City has further isolated the NYPD from being deterred by judicial review by not

establishing a system through which to notify individual officers or their supervisors of unfavorable judicial review of their conduct in suppression hearings and criminal trials. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings in both criminal and civil court that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

66. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident nor was it isolated to NYPD officers, despite evidence of their repeat routine misconduct.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully bring charges against citizens with no legal basis, use excessive force against citizens and create charges in an effort to cover up their misconduct, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

67. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors, in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the

present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

68. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

69. Plaintiff has been damaged as a result of the policy and practice of the deliberate indifference of the Defendant City.

70. As a direct and proximate cause of the acts of the Defendants, Plaintiff suffered the following injuries and damages:

    A. Deprivation of liberty without due process of law;

    B. Maliciously prosecuted;

    C. Falsely arrested;

    D. Denial of a fair trial;

    E. Summary punishment imposed upon him; and

    F. Denied equal protection under the law.

71. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of

citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

**WHEREFORE**, Plaintiff respectfully request judgment against the Defendants as follows:

I. On the First Cause of Action against all Defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

II. On the Second Cause of Action against all Defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

III. On the Third Cause of Action against all Defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988; and

IV. Such other and further relief as this Court may deem necessary in the interest of justice.

Dated: 5/31/2019
Brooklyn, NY

By: _____/s/_____
Paul Hale, Esq.
26 Court St. Ste. 913
Brooklyn, NY 11242
(718) 554-7344